# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | CRIMINAL CASE NO. |
| v. | 1:09-CR-320-TCB-GGB |
| GEORGE WASHINGTON DUNN | |

## NON-FINAL REPORT AND RECOMMENDATION

Pending before the court are Defendant Dunn's Motion to Suppress Physical Evidence and Statements (Doc. 128) and Motion for Evidentiary Hearing re Motion to Suppress Evidence and Statements (Doc. 154). Defendant Dunn did not make any statements to law enforcement. (Doc. 85 at p. 4). The Motion to Suppress Evidence and Motion for Evidentiary Hearing represent Defendant Dunn's attempt to re-litigate suppression issues that were litigated by Dunn's former counsel, and have already been ruled on by the court. As discussed below, I recommend that these motions be denied with no further hearings.

## I.     BACKGROUND

In an indictment returned on July 7, 2009, Defendant Dunn and then-Co-defendant Beeks were charged with conspiracy to distribute cocaine and possession of a firearm during a drug trafficking crime. Defendant Dunn moved to suppress drugs and currency seized from his vehicle after it was stopped on June 2, 2009. I held an evidentiary hearing on this motion on October 21, 2009. The issue at the

suppression hearing (as to Dunn) was whether law enforcement officers violated the Fourth Amendment when they stopped Dunn as he was driving his vehicle (a Malibu) away from a residence located at 920 Memorial Drive, # 25, Atlanta, Georgia.

At the suppression hearing, Dunn was represented by retained attorney Paul Cognac. Mr. Cognac elected not to brief the suppression issue. On December 31, 2009, I issued a Report and Recommendation recommending that Dunn's motions be denied. (Doc. 43).

The Report and Recommendation set forth the following facts that were developed at the hearing:

> On June 2, 2009, based on a tip from an informant, law enforcement officers were conducting surveillance of a residence located at 920 Memorial Drive, # 25, Atlanta, Georgia. The informant told the officers that cocaine was being stored at that location and gave the officers descriptions of two vehicles, a silver Chevrolet Impala and a black Chevrolet Malibu, that he/she said were involved with the drug operation. The informant had given reliable information in the past that had led to arrests or seizures of money or drugs. (Tr. 7-8). The informant told the officers that the Impala had a hidden compartment. (Tr. 10). While watching the house, the officers saw a man open the garage; the silver Chevrolet Impala then pulled into the garage and the garage door closed. The garage door reopened in about twenty minutes at which time the Impala left the garage.
> Detective Fred Becker, a member of the law enforcement team that had been watching the residence at 920 Memorial Drive, # 25, followed the Impala in a marked patrol car. Detective Becker had a trained narcotics detection dog in his car. Detective Becker had been asked by the surveillance officers to follow the Impala. (Tr. 24). He observed the Impala drive erratically, abruptly swerving between the emergency lane and two other lanes. (Tr. 23). He thought that the driver

may have been driving under the influence of alcohol or drugs. (Tr. 26). Detective Becker engaged his blue lights and stopped the Impala. After the driver (Defendant Beeks) presented a valid driver's license, Detective Becker asked him if he had been drinking or had consumed any drugs. Defendant Beeks answered that he had not been drinking, but had smoked a little marijuana earlier. (Tr. 26). Detective Becker administered a test (described as a Nystagmus test of his eyes) to determine if Defendant Beeks was impaired. The results of the test were negative, suggesting that he was not impaired. (Tr. 26). Defendant Beeks appeared nervous; he was rubbing his hands, looking left and right and pacing back and forth. He kept looking back at his vehicle. (Tr. 27-8).

Detective Becker asked Defendant Beeks for consent to search his vehicle. Defendant Beeks declined to give consent. At that point, the stop had lasted about five minutes. Detective Becker then conducted an open-air sniff with his specially trained dog. The dog had been trained and certified in identifying the odors of illegal drugs including marijuana and cocaine. (Tr. 29). The dog alerted to the crease of the rear passenger door, indicating the odor of an illegal drug. (Tr. 33).

Detective Becker and his partner, Detective Morrison, then searched the vehicle and located approximately six kilograms of cocaine and a handgun in a hidden compartment near the back seat of the Impala.

After officers found the drugs and the firearm in the Impala, officers conducting surveillance at 920 Memorial Drive, # 25, observed a second vehicle, a black Chevrolet Malibu, pull into the same garage. The same man who had opened the garage for the Impala opened the garage for the Malibu. (Tr. 14). As with the Impala, the garage door closed, then reopened about twenty minutes later, at which time the Malibu left the garage. (Tr. 13).

Officer Antonio Strobridge, a Dekalb County Police Officer, followed the Malibu after hearing about the cocaine that had been found in the Impala. He observed the Malibu make a lane change without using a turn signal. (Tr. 60). He stopped the Malibu, which was driven by Defendant Dunn, for making an improper lane change.

The Malibu was stopped in a location close to the Impala. (Tr. 61). Shortly after the Malibu was stopped, Officer Morrison's trained and certified narcotics detection dog conducted an open air sniff of that vehicle. The dog alerted to the vehicle indicating the odor of illegal

drugs. (Tr. 81-2, 86). The alert took place less than five minutes after the vehicle was stopped . The Malibu was searched and a large amount of cocaine and currency was found in that vehicle. (Tr. 88).

My Report and Recommendation then went on to find that the stop of co-Defendant Beeks's vehicle was lawful based on the Detective Becker's observation of Beeks's erratic driving and the alert of a trained narcotics dog. Once the six kilograms of cocaine and a handgun in a hidden compartment near the back seat were found in Beeks's Impala, it was obvious that there was reasonable suspicion to conduct a stop and conduct a dog sniff of Defendant Dunn's Malibu which had entered and departed the garage at 920 Memorial Drive, # 25 under circumstances similar to the Impala. The informant's tip, which had been corroborated by the search of the Impala, added only minimally to the reasonable suspicion which allowed the stop of the Malibu.

Mr. Cognac did not file objections to my Report and Recommendation. District Court Judge Timothy Batten adopted my Report and Recommendation on February 1, 2010 (Doc. 47).

On March 16, 2010, the government informed Mr. Cognac of a potential conflict of interest because another client of Mr. Cognac was cooperating with the government and providing information on individuals involved in drug trafficking whom the government associated with Defendant Dunn. To avoid a potential conflict,

the court allowed Mr. Cognac to withdraw and appointed CJA attorney Adam Hames on March 25, 2010 (Doc. 58).  There was no indication that Mr. Cognac had been operating under a conflict of interest at the suppression hearing.

Mr. Hames represented Defendant Dunn until April 16, 2010 when current counsel, James Howard entered an appearance as retained counsel for Dunn. (Doc. 76).

On May 12, 2010, the government obtained a superseding indictment that dropped Beeks[1] and added three new defendants. (Doc. 94).  The new indictment still relies on the evidence that was seized from Dunn's Malibu on June 2, 2009, and the government plans to use that evidence against Dunn at trial.

Dunn's retained counsel concedes that his current motions seek to re-litigate the same suppression issues that were the subject of the October 21, 2009 hearing.  He asserts[2] that at a new hearing, he would present evidence from the informant who tipped off the officers. However, when I asked counsel how the informant would help him, he could not provide that information.  He conceded that he had not spoken to

---

[1] By this time Defendant Beeks had entered a guilty plea to the original indictment.

[2] These arguments were made at the pre-trial conference held on June 7, 2010 which has not been transcribed.  If Dunn objects to this order, he will be responsible for ordering and paying for the transcript of that pre-trial conference for the district court to review.

the informant and did not know what the informant would say.

Dunn's counsel also states that he wants to present argument regarding the suppression issues that former counsel did not make. However, the only argument he could proffer was that the information from the informant did not justify the traffic stop.

## II.   DISCUSSION

A superseding indictment does not give a defendant the right to re-litigate a motion to suppress when the superseding indictment raises no new issues regarding the legality of the seizure of evidence. The court's previous order is the law of the case. See United States v. O'Neill, 52 F.Supp.2d 954, 965-66 (E.D.Wis.1999)(denying motions to suppress filed in a superseding indictment because the court already resolved the issues before the new indictment, and its prior rulings had become the law of the case).

I may have exercised my discretion to reopen the evidence or argument on the motion to suppress if Defendant Dunn had proffered evidence or argument that had a chance of changing the result, but he has not done so. To the extent Defendant Dunn contends that testimony from the informant is necessary, this argument is without merit because: (1) Dunn does not know what the informant would say; (2) the informant's detailed tip had clearly been corroborated by the seizure from Co-

Defendant Beeks's vehicle[3]; and (3) the informant's tip added only minimally to the reasonable suspicion that justified the stop.

Under the circumstances, a new evidentiary hearing on the Motion to Suppress would be a waste of resources.

## III   CONCLUSION

Defendant did not make any statements to law enforcement. For this reason and for reasons discussed above, I **RECOMMEND** that Defendant Dunn's Motion to Suppress Physical Evidence and Statements (Doc. 128) and Motion for Evidentiary Hearing re Motion to Suppress Evidence and Statements (Doc. 154) be **DENIED**.

**SO RECOMMENDED** this 26th day of July, 2010.

_____
GERRILYN G. BRILL
UNITED STATES MAGISTRATE JUDGE

---

[3] Defendant Dunn would not have standing to challenge the stop of Beeks's vehicle.